IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PACIFIC FRONTIER, INC., et al.,<br><br>       Plaintiffs,<br><br>vs.<br><br>CITY OF ST. GEORGE, et al.,<br><br>       Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:04-CV-780 TC |

   In this First Amendment commercial speech case, brought under 42 U.S.C. § 1983, the Plaintiffs bring a facial challenge to an ordinance regulating door-to-door sales activity in the City of St. George. The Defendants have filed a Motion to Dismiss Plaintiffs' Amended Complaint on the basis that the Plaintiffs do not have standing to bring a claim under Section 1983 of the Civil Rights Act, and even if they do have standing, they have not, and cannot, state a claim under Section 1983 because there is no state action.

   The court finds that Section 1983 is the proper avenue for Plaintiffs to bring their claims, that Plaintiffs, with the exception of Redwood Division Pro Club 100%, Inc., do have standing under Section 1983, and that they have stated a proper claim for relief under Section 1983. For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[1]

The Plaintiffs, who market and sell Kirby Company ("Kirby") vacuum cleaners, consist of (1) Kirby distributors (Pacific Frontier, Inc., J&L Distributing, Edman & Sons, Inc., GPIII, Inc., BDL Systems, Inc., and Geneva Distributing, Inc.) (hereinafter "Distributors"), (2) a regional sales association for various distributors of Kirby products (Redwood Division Pro Club 100%) (hereinafter "Redwood"), and (3) independent Kirby dealers (Steven Mantz, Gene Paul Reynolds, Carson Artz, Ben Lansford, Parham Rezacipour, and David Cunningham) (hereinafter the "Dealers").  Kirby, which manufactures the vacuum cleaners being sold by the Plaintiffs, is not a party to the lawsuit.

The only method by which Kirby sells and markets its products is through independent contract distributors and, subsequently, independent contract dealers, who actually engage in door-to-door solicitation and in-home demonstrations.  Kirby factory distributors purchase Kirby cleaning systems directly from the Kirby factory and sell the systems to independent Kirby dealers with whom the distributor has contracted.  Kirby area distributors purchase Kirby systems from a factory distributor and otherwise operate similarly to the factory distributors by selling the systems to independent Kirby dealers.  The regional sales association for distributors of Kirby products – Redwood Division Pro Club 100% – serves distributors of Kirby products throughout the western United States.  In particular, it is funded by money received from distributors, including the Distributor Plaintiffs, and calculated based on a portion of funds for each sale of a cleaning system.  Redwood then distributes the funds for trip incentives, prizes to sales representatives, training seminars, and other business-related activities.  The independent Kirby

---

[1]The facts stated in this section are taken from Plaintiffs' Amended Complaint.

dealers (individuals, not corporate entities) do the actual door-to-door solicitation and in-home demonstrations, with assistance from the factory and area distributors.

The Plaintiffs have named the City of St. George, a municipal corporation and political subdivision of the State of Utah, and St. George officials as Defendants. Each of the individual Defendants is named in his or her official capacity. Accordingly, Plaintiffs have brought a § 1983 municipal liability action against St. George City, alleging that the City has violated their First Amendment rights through enactment and enforcement of a solicitation and licensing regulation scheme enacted by the City.

## ANALYSIS

**Legal Standard**

In evaluating a 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true. See Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002). The court must also "view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed." Id. Under Rule 12(b)(1), essentially the same standard applies. Because the court has not held an evidentiary hearing, the court accepts as true the Amended Complaint's uncontroverted factual allegations. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

**Standing Under 42 U.S.C. § 1983**

The Defendants contend that the Plaintiffs do not have standing under 42 U.S.C. § 1983 to bring their pre-enforcement facial challenge to the City's solicitation ordinance. They suggest that if the Plaintiffs want to obtain redress for alleged violation of their constitutional rights, they are free to bring their claim under the Declaratory Judgment Act. In support of their argument,

they assert that Congress did not intend to provide the relief that Plaintiffs seek under 42 U.S.C. § 1983 (i.e., declaratory relief in a pre-enforcement challenge).  The Defendants' position is incorrect.

The Declaratory Judgment Act does not provide a private right of action to the Plaintiffs or give this court subject matter jurisdiction.  "It is well established that the Declaratory Judgment Act 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1265 (10th Cir. 2004) (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)).  There must be an independent basis for jurisdiction in order to obtain the remedy provided by the Declaratory Judgment Act.  Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 822 (10th Cir. 1981).  That is, the Plaintiffs must still establish that they have a private cause of action.  Section 1983 provides that private cause of action.  See, e.g., Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924, 934 (1982) (noting that purpose of section 1983 was to enforce individual citizens' rights guaranteed under the United States Constitution by providing a remedy for violation of those rights by a state actor); Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 700-01 (1978) ("[T]here can be no doubt that § 1 of the Civil Rights Act [precursor to § 1983] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights.").  During the Senate debate on § 1 of the Civil Rights Act, Senator Thurman stated:

> This section [§ 1, the precursor to § 1983] relates wholly to civil suits . . . . <u>Its whole effect is to give to the Federal Judiciary that which now does not belong to it – a jurisdiction that may be constitutionally conferred upon it, I grant, but that has never yet been conferred upon it.</u>  It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United

> States, to bring an action against the wrong-doer in the Federal courts, and that without any limit whatsoever as to the amount in controversy . . . .

Monell, 436 U.S. at 686 (quoting Senator Thurman's statement made during debate on the Civil Rights Act of 1871) (emphasis added). Indeed, the Act specifically provides for declaratory, as well as monetary and injunctive, relief. See Monell, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief").

Also, no case law supports the Defendants' proposition that standing requirements under § 1983 are somehow more rigorous than Article III standing requirements. Rather, courts analyzing first amendment facial challenges brought under § 1983 have relied on the Article III standing analysis and nothing more. See, e.g., Virginia v. American Booksellers Ass'n, 484 U.S. 383, 390, 392-93 (1988) (analyzing under Article III, the court found that plaintiffs bringing pre-enforcement facial challenge under § 1983 had standing); Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (same); Association of Community Organizations for Reform Now ("ACORN") v. Municipality of Golden Colorado, 744 F.2d 739, 745 n.3 (10th Cir. 1984) (same). Accordingly, the court analyzes the issue of Plaintiffs' standing using the Article III analysis.

Plaintiffs have the burden of proving that they have Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To establish Article III standing, the Plaintiffs must show that a case or controversy exists. Id. at 559-60. Specifically, the Plaintiffs must show that they have suffered an injury-in-fact, that there is a causal connection between their injuries and the challenged conduct (the injuries must be "fairly traceable" to the challenged conduct of the Defendants), and that it is likely the injury will be redressed by a decision favorable to the

Plaintiffs. Id. at 560-61. The "injury in fact" must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'." Id. at 560 (internal citations and quotation marks omitted).

In addition to the constitutional "case or controversy" requirement, courts must take into account prudential considerations to determine whether the plaintiff has standing. See Warth v. Seldin, 422 U.S. 490, 499 (1975). That is, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. In the context of a facial challenge to an ordinance under the First Amendment, however, the prudential standing requirements are relaxed. Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392 (1988); Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1287 n.13 (10th Cir. 2002). As the United States Supreme Court noted:

> Even if an injury in fact is demonstrated, the usual rule is that a party may assert only a violation of its own rights. However, in the First Amendment context, "'[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'"

Id. at 392-93 (internal citations omitted).

In cases involving a pre-enforcement challenge to the language of a statute or regulation, a plaintiff may establish standing by showing either a credible threat of prosecution or the statute's chilling effect on free expression. Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003). In such a case, the evidentiary bar to establish standing is low. See, e.g., Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (standing satisfied where the

plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution" under that statute); Mangual, 317 F.3d at 57 ("As to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low."); New Hampshire Right To Life Political Action Committee v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.").

### Individual Plaintiffs (the Dealers)

The Individual Plaintiffs allege an interest in engaging in commercial speech, have expressed a desire to solicit in St. George, and have alleged actual solicitation and/or an intent to solicit in St. George. They allege that they have refrained from soliciting for fear of criminal prosecution under the solicitation ordinance. There is no question that a decision favorable to the individual Plaintiffs would redress their injuries. Based on the allegations, and the low evidentiary bar to establish standing, the court finds that all individual Plaintiffs (the Dealers) have standing to pursue this action.

### Organizational Plaintiffs

#### *Distributors*

The court finds that the Distributor Plaintiffs have standing to pursue this action. The Distributors have alleged their own First Amendment interests in advertising their wares to the general public. Because the avenue by which they have chosen to sell their product (door-to-door solicitation) is the sole avenue used by Kirby and its Distributors, the solicitation ordinance does indeed affect them and their constitutional rights. The fact that the Dealers are independent

contractors of the Distributors is of no consequence.

Also, while the Distributor Plaintiffs may not face direct threat of criminal prosecution, they have amply alleged that they have refrained from selling their wares in St. George because of the burdens placed on their sales force and potential criminal sanctions faced by the Dealers. See, e.g, Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003) (in cases involving a pre-enforcement challenge to the language of a statute or regulation, a plaintiff may establish standing by showing either a credible threat of prosecution or the statute's chilling effect on free expression). The Distributors' only method by which they can advertise their wares is through the use of the Dealers, who are directly affected by the statute. The interests of the Dealers and the Distributors are intertwined.

*Redwood Division Pro Club 100%, Inc.*

The situation for Redwood Division Pro Club 100%, Inc. ("Redwood") is different. Redwood's only alleged injury is economic and there is no allegation that Redwood has a free speech interest that is somehow being infringed upon as the result of the solicitation ordinance. Redwood does not have standing because it has not alleged a personal civil right affected by the solicitation ordinance. Accordingly, the court finds that Redwood does not have standing to pursue this action.

**State Action Under 42 U.S.C. § 1983 in First Amendment Cases**

Defendants also contend that even if Plaintiffs have standing, Plaintiffs cannot state a claim for which relief may be granted under 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that "[e]very person, who under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . .

to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

Plaintiffs assert that the mere existence of the ordinance is not enough to establish "state action" under the elements of Section 1983, and they cite to Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658 (1978), to support of their position. The United States Supreme Court in Monell stated that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [But] Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 690-91.

Monell did not address the specific issue before the court – that is, whether, in a First Amendment context, the enactment of an ordinance, without more, is state action for purposes of § 1983. Moreover, despite Defendants' contention, Monell does not foreclose the Plaintiffs' position that they have stated a cause of action under Section 1983. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," municipalities may be directly liable under Section 1983 for monetary, declaratory, or injunctive relief. Monell, 436 U.S. at 690, 694. Enactment of an ordinance is execution of the government's policy. Such a conclusion is at least implicit in cases finding municipal liability in a section 1983 case where the municipal ordinance was challenged before any enforcement action was taken. See, e.g.,

Virginia v. American Booksellers Ass'n, 484 U.S. 383, 390, 392-93 (1988) (holding that pre-enforcement facial challenge under § 1983 was valid claim); Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (finding facial challenge in § 1983 case valid and stating that "[w]e decline to hold that solicitors must first apply for and be denied a license before challenging a licensing ordinance's constitutionality."); Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1065-66, 1077 (10th Cir. 2001) (in § 1983 action seeking declaratory and injunctive relief, court applied Central Hudson commercial speech analysis, found that statute restricting liquor advertising was unconstitutional, and ordered injunctive relief); Association of Community Organizations for Reform Now ("ACORN") v. Municipality of Golden, Colorado, 744 F.2d 739, 744 (10th Cir. 1984) ("Applying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law."). These cases support the proposition that enactment of an ordinance which has a chilling effect on speech is sufficient, without more, to constitute state action under § 1983. That is, in the First Amendment free speech context, courts have found that plaintiffs who suffer a chilling effect on their speech as the result of enactment of an ordinance have suffered injury under § 1983. Here, Plaintiffs have sufficiently alleged that the Defendants enacted or enforced the solicitation ordinance under color of law and that the ordinance is an official policy of the city enacted by officials with final policy making authority. Accordingly, the Plaintiffs have stated a cause of action under 42 U.S.C. § 1983.

## ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is GRANTED IN PART AND DENIED IN PART. Specifically, Plaintiff Redwood

Division Pro Club 100%, Inc. does not have standing to bring a § 1983 claim, and so it is dismissed as a party. But the remaining Plaintiffs do have standing. Also, Plaintiffs have sufficiently alleged a cause of action under 42 U.S.C. § 1983.

DATED this 6th day of December, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge